UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Docket No. 1:18-cr-00015-NT |
| ) | |
| NEWELL MOWRY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

The Defendant Newell Mowry filed a *pro se* motion for compassionate release on August 19, 2020 (ECF No. 24). After reviewing the motion, I issued an Order to Show Cause as to why the motion should not be denied due to Mr. Mowry's failure to exhaust his administrative remedies (ECF No. 30). Mr. Mowry subsequently responded to my Order to Show Cause by filing the pending amended motion for compassionate release ("**Def.'s Am. Mot.**") (ECF No. 35), to which the Government responded (ECF No. 37). The Defendant's amended motion for compassionate release (ECF No. 35) is **GRANTED**.

**PROCEDURAL BACKGROUND**

On March 21, 2018, the Defendant pleaded guilty to one count of Possession of Child Pornography (Minor Under 12), in violation of 18 U.S.C. § 2252A(a)(5)(B). Presentence Investigation Report ("**PSR**") ¶ 1 (ECF No. 27-3). On July 31, 2018, I sentenced Mr. Mowry to the mandatory minimum term of 120 months imprisonment, followed by 120 months of supervised release, and I ordered him to pay $32,500 in restitution. Judgment (ECF No. 20).

Mr. Mowry is incarcerated at the Federal Correctional Institution, Fort Dix ("**FCI Fort Dix**"). Mr. Mowry requested compassionate release from the Warden on October 14, 2020. Def.'s Am. Mot. 33; Def.'s Am. Mot. Ex. E (ECF No. 35-5). More than thirty days have elapsed since this request, and it appears that Mr. Mowry has received no response. The Government acknowledges that Mr. Mowry has exhausted his administrative remedies. Gov't's Resp. to Am. Mot. for Compassionate Release ("**Gov't Resp.**") 10 n.7 (ECF No. 37).

## ANALYSIS

Congress enacted the compassionate release statute[1] to allow district courts to modify sentences of imprisonment, as relevant here, upon finding that: (1) extraordinary and compelling reasons warrant modification, (2) the modification accords with the § 3553(a) sentencing factors, and (3) the modification is consistent

---

[1] Title 18, United States Code, Section 3582(c)(1)(A) governs "[m]odification of an imposed term of imprisonment." Prior to the passage of the First Step Act of 2018, only the Director of the Bureau of Prisons ("**BOP**") could move for modification of a sentence. *See United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). In December of 2018, Congress amended § 3582(c) to allow inmates to seek a modification of an imposed term of imprisonment from the courts directly. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)). Section 3582 now provides that:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c).

with "applicable policy statements" of the Sentencing Guidelines. I address each part of the analysis in turn.

**I.      Extraordinary and Compelling Circumstances**

Mr. Mowry is a 69-year-old man with multiple medical conditions, including hypertension, chronic obstructive pulmonary disease ("**COPD**"), Type 2 diabetes, and obesity. PSR ¶ 34. He also has an abdominal aortic aneurysm that requires a CT scan every six months to monitor its size. PSR ¶ 34. He underwent surgery early last year to repair his aortic aneurysm, but complications forced the surgery to be aborted. Selected Med. Records 28 (ECF No. 35-3). Surgery has now been delayed due to the pandemic. Selected Med. Records 28.

Mr. Mowry's medical conditions increase his risk of severe illness were he to be infected with SARS-CoV-2, the virus that causes COVID-19. The Centers for Disease Control and Prevention caution that individuals with certain underlying medical conditions, including COPD, obesity, and Type 2 diabetes, are at "increased risk of severe illness from the virus that causes COVID-19." *See* Centers for Disease Control and Prevention, "COVID-19 (Coronavirus Disease), People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 26, 2021) (emphasis deleted). Individuals with hypertension also "might be at an increased risk." *Id.* (emphasis deleted). In addition, the Government concedes that several of Mr. Mowry's medical conditions constitute extraordinary and compelling reasons that may warrant compassionate release. Gov't Resp. 10. I find that Mr. Mowry's medical conditions likely make him more susceptible to complications from COVID-19.

3

Less than two months ago, FCI Fort Dix was the site of a severe SARS-CoV-2 outbreak, with 303 inmates and twenty-eight staff testing positive as of November 30. *United States v. Vega*, 89-CR-0229-2(JS), 2020 WL 7060153, at *1 (E.D.N.Y. Dec. 2, 2020). The wave of inmate infections ultimately crested, and as of December 16, the prison was reporting fewer inmate infections (twelve) but an increased number of staff infections (forty-seven). Gov't Resp. 8.

However, circumstances quickly changed. Less than one month clear of its last outbreak, FCI Fort Dix was in the throes of a second. As of January 13, 2021, the prison was reporting 687 inmate cases and twenty-nine staff cases. Jan. 13, 2021, Status Report (ECF No. 46). The latest outbreak has abated, to an extent, and FCI Fort Dix now reports that 1,409 inmates, as well as forty-five staff, have recovered from the virus. Bureau of Prisons, COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/ (last visited Jan. 26, 2021).[2] However, as of January 26, 2021, FCI Fort Dix reports that there are still forty inmates and thirty-two staff testing positive for SARS-CoV-2. Bureau of Prisons, COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/ (last visited Jan. 26, 2021).

The Government describes all that the Bureau of Prisons ("**BOP**") has done to try to prevent and contain the spread of SARS-CoV-2 within the walls of the federal prison system. Gov't Resp. 3–7. I do not opine on the adequacy or effectiveness of these efforts. However, it speaks for itself that FCI Fort Dix has had two severe viral outbreaks within a month of one another and that there continue to be a significant

---

[2] The prison reports one inmate death and no staff deaths. https://www.bop.gov/coronavirus/ (last visited Jan. 26, 2021).

number of infections at the facility. While the BOP may well be doing everything within its power to combat the spread of SARS-CoV-2 at FCI Fort Dix, it is apparent that these efforts are insufficient under the circumstances. Rather than serve as evidence in support of the Government, this is evidence in support of the Defendant, because it shows that even despite BOP's best efforts, the virus has continued to spread at FCI Fort Dix. Given Mr. Mowry's medical conditions, the recent outbreaks at FCI Fort Dix, and the still-high number of infections that the facility is currently reporting, I find that there exist extraordinary and compelling reasons for release in this case.

Because I find that Mr. Mowry has established extraordinary and compelling reasons for a modification of his sentence, I go on to consider the § 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A).

## II.   Applicable 3553(a) Factors

When I originally sentenced Mr. Mowry for violating 18 U.S.C. § 2252A(a)(5)(B), his prior state conviction for possession of images of child pornography triggered a ten-year mandatory minimum, pursuant to 18 U.S.C. § 2252A(b)(2). While I considered the § 3553(a) factors as I am always required to do, because of my obligation to impose the ten-year mandatory minimum, the § 3553(a) factors were somewhat beside the point. *See* PSR ¶ 43; 18 U.S.C. § 2252A(b)(2). I now review what I consider to be the applicable § 3553(a) factors in the context of the Defendant's motion.

### A. Need for the Sentence to Reflect the Seriousness of the Offense & Provide Adequate Deterrence

I begin with the seriousness of the offense. There is no question that the possession of child pornography, particularly after a previous conviction for the same type of crime, is serious. The circulation of child pornography "is intrinsically related to the sexual abuse of children" and is itself harmful, separate and apart from the hands-on sexual abuse of a child. *New York v. Ferber*, 458 U.S. 747, 759–60 (1982). Mr. Mowry's crime involved downloading images and videos of minors engaged in sexual conduct, and he possessed a significant number of images and videos. PSR ¶¶ 2–6. While extremely serious, there was no evidence that Mr. Mowry ever committed a contact offense or groomed a child with the intent to commit one. In addition, Mr. Mowry accepted responsibility at an early stage of this case, having waived indictment and pleaded guilty to the Information just a few months after his crime was detected by law enforcement. PSR ¶¶ 1–2, 10.

Mr. Mowry has now served over thirty-four months in prison. *See* PSR ¶ 1 (noting that Mr. Mowry was remanded into custody on March 21, 2018). The BOP, having considered deductions for good conduct, lists a projected release date of September 27, 2026. Find an inmate, *Newell Mowry*, www.bop.gov/inmateloc/ (last visited Jan. 26, 2021). Accordingly, Mr. Mowry has served approximately twenty-eight percent of the sentence I imposed and approximately one-third of his sentence if good-time deductions are factored in. At the time that I sentenced Mr. Mowry to a term of imprisonment, prison posed no greater risk to his well-being than to the average criminal defendant. Now, prison has become a more dangerous place for Mr.

Mowry given his health conditions and given that prisons, by their nature, put those who are incarcerated at a heightened risk of infection. *See United States v. Telson*, Case No. 16-80178-CR, 2020 WL 5742624, at *3 (S.D. Fla. Sept. 21, 2020) ("Due to the conditions under which inmates live, they are at extreme risk of infection once COVID-19 breaches prison walls."). When I originally sentenced Mr. Mowry, I "did not intend for his sentence to 'include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic.' " *United States v. Carter*, No. 16-cr-156 (TSC), 2020 U.S. Dist. LEXIS 208639, at *3 (D.D.C. June 10, 2020) (quoting *United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020)); *United States v. Weikel*, Criminal Case No. 16-20659, 2020 WL 6701914, at *5 (E.D. Mich. Nov. 13, 2020) ("While the nature of Weikel's offense was undeniably serious, it did not merit a death sentence . . . .").

I find that under these circumstances, a sentence of thirty-four months is a significant sentence that adequately reflects the seriousness of the crime and affords adequate deterrence.

### B.   History and Characteristics of the Defendant

The § 3553(a) factors also require an examination of the history and characteristics of the Defendant. Mr. Mowry reports that he was sexually abused at the age of four and again at the age of twenty-one, the latter time by a superior officer when he was in the military. PSR ¶¶ 32, 36–37.

Mr. Mowry has a history of medical and mental health problems, including not only the conditions discussed above, but also sleep apnea, hyperlipidemia, chronic lower back pain, PTSD related to Military Sexual Trauma, bipolar disorder, and

7

depression. PSR ¶¶ 34, 36. He has twice attempted suicide and has previously been hospitalized for suicidal ideations. PSR ¶ 36. Mr. Mowry also has a lengthy history of abusing alcohol and marijuana, and he has been in and out of rehab. PSR ¶¶ 32–33, 38. For a period of time he was homeless. PSR ¶ 32.

Mr. Mowry's only criminal conviction is his prior state child pornography conviction, for which he received a sentence of five years of probation (resulting in no criminal history points).[3] PSR ¶ 26. Further, Mr. Mowry has had no disciplinary infractions while at BOP, and he has fully paid the restitution that he was ordered to pay at sentencing. Gov't Resp. 2.

### C. Protection of the Public

Section 3553(a)(2)(C) requires me to consider the need to protect the public from further crimes of the defendant. As discussed above, Mr. Mowry's offense is serious, but he does not pose as significant a danger to the community as someone with a history of grooming children or touching them. And the Government acknowledges that Mr. Mowry's risk of committing a contact offense is extremely low, given his lack of a history of such offenses, his age, his health, his limited mobility, and his release plan. Gov't Resp. 13.

Robust supervised release conditions can be deployed to alleviate concerns as to the safety of the community. There are numerous conditions of supervised release that will help protect the community, including an internet monitoring program,

---

[3] Mr. Mowry was previously charged in 1998 with a federal child pornography offense that appears to be related to his prior state conviction. Presentence Investigation Report ("**PSR**") ¶ 28 (ECF No. 27-3). That charge was dismissed three days after he was arrested on the state offense. *Compare* PSR ¶ 26, *with* PSR ¶ 28.

participation in a sex offender treatment program, and regular polygraph examinations. *See* Judgment 5. Further, Mr. Mowry's probation officer has the authority to conduct searches based on reasonable suspicion, and failure to submit to such a search constitutes grounds for a revocation of supervised release. These conditions of supervised release, as well as the supervision by Mr. Mowry's brother, with whom he intends to live, will minimize the risks associated with the possibility that he will again seek out child pornography. In addition, I am imposing an additional condition of supervised release that will strictly limit his contact with minors.

"Congress did not write child pornography offenders out of the compassionate release statute." *United States v. Millette*, Docket No. 2:16-cr-00004-NT, 2020 WL 7502454, at *4 (D. Me. Dec. 21, 2020). And "multiple courts across the country have granted compassionate release to defendants who committed child pornography or other sexual offenses after determining that the defendants were at great risk for serious complications" were they to be infected with SARS-CoV-2. *Id.* at *4 n.3 (citing cases). Similarly, Congress did not "exempt prisoners serving a mandatory minimum sentence of imprisonment from the ability to seek compassionate release."[4] *Id.* at *4. With adequate conditions of supervised release, I can effectively mitigate the risk that Mr. Mowry will reoffend. And in the event that he does return to his past

---

[4] The Government has not argued that Mr. Mowry is ineligible for compassionate release because he has not completed his mandatory minimum sentence, and I consider any argument to that effect to be waived.

conduct, I, of course, retain the power to revoke his supervised release and return him to prison.

### D.    The Sentencing Guidelines

Section 3553(a)(4) directs me to consider the sentencing guidelines. Mr. Mowry, who had a total offense level of 27 and fell in a criminal history category I, PSR ¶¶ 24, 27, would have faced a sentencing guidelines range between 70 and 87 months, PSR ¶ 43.[5] Because of his prior state conviction, Mr. Mowry's guideline range became the statutory minimum of 120 months. I also consider the potential that Mr. Mowry's own history of sexual abuse as a child, his history of depression and suicide attempts, his substance abuse history, and his medical conditions may have been factors supporting a variance below the guideline range, had such a variance been legally permissible. *See Millette*, 2020 WL 7502454, at *5.

### E.    Unwarranted Sentencing Disparities

Section 3553(a) also requires consideration of the need to avoid unwarranted sentencing disparities. There is significant variation in the charging of individuals who possess child pornography within this District. Just a few months ago, the Government chose not to charge a person who had previously been convicted of

---

[5]    "Even at the time of his original sentence, the guidelines for child pornography possession cases had come under criticism as being unduly harsh and not focused on particularly relevant factors, such as whether the defendant had ever had sexual contact with a minor. The United States Sentencing Commission has recognized that the sentencing guidelines are not working as intended in the context of offenders who commit non-production child pornography offenses and that § 2G2.2 of the Guidelines warrants revision. This is because there are certain specific offense characteristics enhancements, such as use of a computer, that apply in virtually every case, with the end result that the guideline range for most offenders approaches or exceeds the statutory maximum." *United States v. Millette*, Docket No. 2:16-cr-00004-NT, 2020 WL 7502454, at *5 n.5 (D. Me. Dec. 21, 2020) (internal citations omitted).

possession of child pornography after he had been caught possessing a flash drive containing child pornography while on supervised release. *See* Stipulation & Agreement, *United States v. Whittenburg*, No. 2:14-CR-82-NT, ECF No. 71 (D. Me. Nov. 4, 2020). In that case, the Government opted to treat the matter as a violation of the defendant's conditions of supervised release for which the Government recommended a sentence of twenty-four months. *See id.* Had the Government instead pursued that case as a second child pornography offense, it could have triggered the ten-year mandatory minimum. *See* 18 U.S.C. § 2252A(b)(2). I understand that the Government often possesses more information than the Court, and I am not criticizing the Government's charging decisions. But there exists a wide range of sentences being imposed on individuals convicted of possessing child pornography.

In light of the above, I conclude that a thirty-four-month term of imprisonment accords with the § 3553(a) factors.

### IV. Consistency with Applicable Policy Statements by the Sentencing Commission

The United States Sentencing Commission's policy statement on compassionate release is found at § 1B1.13 of the sentencing guidelines. But the Sentencing Commission has not yet revised § 1B1.13 in light of the intent of the First Step Act of 2018 (the "**First Step Act**") to expand the use of the compassionate release statute. *See United States v. Brooker*, 976 F.3d 228, 233–234 (2d Cir. 2020). This is because the Sentencing Commission has not had a quorum since the second quarter of fiscal year 2019. U.S. Sentencing Comm'n, *Annual Report* 2–3, 2018, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/

annual-reports-and-sourcebooks/2018/2018-Annual-Report.pdf. Because the compassionate release statute only directs courts to consider "*applicable* policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A) (emphasis added), I need only consider § 1B1.13 if it is in fact "applicable" to a compassionate release motion filed by a prisoner rather than by the BOP, *see United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020).[6] As I have previously found, "§ 1B1.13 is not an 'applicable' policy statement, particularly since it does not reflect the Sentencing Commission's views in light of the passage of the First Step Act." *Millette*, 2020 WL 7502454, at *6. And while § 1B1.13 continues to "provide[] helpful guidance," the guidance that it offers in this context is somewhat limited, given the analysis already required by § 3582(c) and given the Government's concession that there exist extraordinary and compelling reasons in this case. *See id.*

## V. Plan for Release

Finally, I must consider the acceptability of Mr. Mowry's release plan. I conclude that Mr. Mowry has established an acceptable release plan. He intends to live in a small apartment attached to his brother's farmhouse in rural New Hampshire. Nov. 30, 2020, Letter from Newell Mowry ("**Nov. Letter**") (ECF No. 35-6). The only occupants on the property are Mr. Mowry's brother and his brother's wife, and there are no children living in the vicinity of the property. Nov. Letter. He will not have a computer and will not use the internet without the permission of his

---

[6]   Section 1B1.13 is "[t]he only policy statement that possibly could be 'applicable' " to Mr. Mowry's compassionate release motion. *See United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020).

Probation Officer. Jan. 4, 2021, Letter from William Maddox ("**Jan. Letter**") (ECF No. 43). Mr. Mowry will be able to financially support himself using his monthly pension. Jan. Letter.

It also appears that all relevant parties are on board with this release plan. Mr. Mowry's brother is supportive of Mr. Mowry living with him. Jan. Letter. The Government has not lodged any objections as to this release plan and even acknowledges that this plan "will likely have some effect in inhibiting future crimes" by Mr. Mowry. Gov't Resp. 13. And the Probation Office has confirmed that Mr. Mowry's release plan is satisfactory. This is a release plan that will allow for adequate supervision of Mr. Mowry and that will allow him to fulfill all conditions of his supervised release.

## CONCLUSION

For the foregoing reasons, the Defendant's Amended Motion for Compassionate Release (ECF No. 35) is **GRANTED**. The Defendant is **ORDERED** released within twenty-one days of the date of this order upon the completion of any quarantine and COVID-19 testing protocols required by the BOP. The Defendant's sentence is reduced to time served, plus the completion of this quarantine period. Upon release from custody, the Defendant will complete the remainder of his sentence, including his ten-year term of supervised release, as outlined in the original Judgment of this Court on July 31, 2018 (ECF No. 20). In accordance with 18 U.S.C. § 3583(e), I am also modifying Mr. Mowry's supervised release conditions to include the following additional term: The defendant shall not associate, or have verbal,

written, telephonic, or electronic communication, with persons under the age of eighteen, except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense, and who has been approved by the probation officer. This restriction does not extend to incidental contact during ordinary daily activities in public places.

SO ORDERED.

                                                   /s/ Nancy Torresen
                                                   United States District Judge

Dated: January 26, 2021